# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott T. Young,                          :
              Appellant     :
                         :
              v.     :   No. 658 C.D. 2015
                         :   Submitted: February 19, 2016
The Estate of Frank J. Young         :
and Norma Young                      :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


**OPINION**
**BY JUDGE SIMPSON**             **FILED: April 12, 2016**

Scott T. Young (Plaintiff), representing himself, appeals from a March 13, 2015 order of the Court of Common Pleas of Monroe County[1] (trial court) denying Young's motion for reconsideration of its March 4, 2015 order sustaining preliminary objections to Young's complaint seeking compensatory damages from the estates of his late aunt and uncle (Defendants or Estates). Essentially, Plaintiff's complaint alleged that certain unnamed individuals mistreated Plaintiff's aunt and uncle in their last days. The individuals also interfered with Plaintiff's relationship with his aunt and uncle by denying him visitation. Because we consider Plaintiff's uncounseled appeal to be a timely appeal of the trial court's order sustaining Defendants' preliminary objections, we address the merits of Plaintiff's appeal. For the reasons that follow, we affirm.

---

[1] The Honorable David J. Williamson presided.

## I. Background

### A. Generally

Plaintiff is a nephew of the late Frank J. Young and his wife, Norma Young. They were married for 50 years. In June 2014, Norma Young died testate; her will left her entire estate to her husband. In August 2014, Frank Young died testate. He willed the bulk of his assets to nine charitable organizations (Charities).[2]

Following the probate of Frank Young's will, John A. Young, another nephew, filed an informal caveat. However, he failed to file a bond, and the caveat was deemed withdrawn. In September 2014, letters testamentary were issued to the executor named in the will, Attorney Richard E. Deetz (Executor).

### B. Writ of Summons

In October 2014, Plaintiff initiated the underlying action in this case by filing a writ of summons naming "The Estate of Frank and Norma Young" as defendants. See Certified Record (C.R.), Writ of Summons, filed 10/31/15. Thereafter, the trial court issued a rule against Plaintiff to file a complaint within 20 days. In response, Plaintiff filed a motion seeking a stay of the filing period for

---

[2] The charitable beneficiaries of Frank Young's Estate included the: Alzheimer's Disease and Related Disorders Association, American Cancer Society, Inc., American Heart Association, Christ Hamilton United Lutheran Church, Shriners Hospitals for Children, Animal Welfare Society of Monroe, Diakon Lutheran Social Ministries (d/b/a Lutheran Home at Topton), Masonic Villages of the Grand Lodge of Pennsylvania, and Salvation Army.

the complaint in order to conduct pre-complaint discovery. The trial court denied Plaintiff's motion. Tr. Ct. Order, 1/15/15.

### C. Complaint

On January 22, 2015, Plaintiff filed a complaint against Defendants alleging "loss of consortium and the los[s] of support, cooperation, aid, companionship and loving interactive relationship critical in the last days of [his aunt's and uncle's] life." Compl., 1/22/15 at ¶1. Plaintiff's complaint sets forth the following allegations. An attorney for the "Estate of Frank and Norma Young" issued a letter that was posted on his aunt and uncle's residence directing him not to trespass or contact his aunt or uncle. Compl. at ¶1. When Plaintiff attempted to visit his aunt and uncle, a stranger, while behind closed doors, repeatedly met him and told him to leave the property in accord with instructions posted by Valerie Glassford (Glassford). Compl. at ¶2. Plaintiff contacted Glassford, who denied knowledge of such instructions. Compl. at ¶3. Thereafter, Plaintiff again confronted the stranger at the residence, who then claimed her directions to deny Plaintiff visitation came from a personal care provider named Sanki. Id.

On another occasion, Sanki refused to open the door or permit Plaintiff to visit his aunt and uncle. Compl. at ¶4. Plaintiff's aunt appeared behind Sanki and demanded to speak with him. Id. Sanki physically blocked Plaintiff's aunt and closed the draperies. Id. Plaintiff's aunt then appeared at the kitchen window and shouted something to Plaintiff. Id. Plaintiff's aunt was then removed from the window and not seen again. Id.

On yet another occasion, Plaintiff's uncle, in the presence of women Plaintiff believed to be nurse's aides, invited him into the home. Compl. at ¶5. Plaintiff's aunt then joined them. Id. She appeared ragged and unkempt. Id. Plaintiff's aunt then asked the other women why they opened the screen door for Plaintiff. Id. They replied that Plaintiff's uncle wanted him to come inside. Id. Plaintiff's aunt then stated she wished Plaintiff could come anytime. Id. However, Plaintiff's aunt also told Plaintiff not to come when "the others" were around because they will put her on the sixth floor if she "doesn't play along." Id. Thereafter, "[a] lengthy visit followed without interruption, enjoying conversation of health, family, inheritance and business." Id.

In paragraph 6, Plaintiff alleged (with emphasis added):

persons obtained, hired, paid and or managed by or with the knowledge of the attorney for, and estate administrator of Frank J. Young and Norma Young, did mentally confuse, emotionally abuse and otherwise impose undue influence, wrongfully interfering with [Plaintiff's] rights and relationships with Frank J. Young and Norma Young, Plaintiff Uncle and Aunt respectively (now deceased) and all benefits thereof.

Compl. at ¶6.

Plaintiff further alleged his uncle denied any knowledge of a letter prohibiting Plaintiff's trespass. Compl. at ¶7. However, Plaintiff's uncle did recognize his signature on the bottom of the letter. Id.

4

In his prayer for relief, Plaintiff alleged that "[whereas] these wrongful acts had a debilitating affect upon [Plaintiff and his aunt and uncle] together and individually and upon the beneficial relationship of the parties, [Plaintiff] seeks compensatory award of the Estate." Compl. at ¶2.

**D. Charities' Petition to Intervene**

In response to Plaintiff's complaint, Charities filed a petition to intervene. See C.R., Petition to Intervene, 1/22/15. Charities averred that the determination of Plaintiff's action would affect their legally enforceable interest in the remainder of Frank J. Young's Estate. Id. Further, Charities asserted Plaintiff's action was improper because it constituted a will contest and should have been filed as either a caveat to or appeal from probate. Id.

In February 2015, after Plaintiff failed to timely file an answer or respond to a rule to show cause, the trial court entered an order making the rule absolute and granting Charities leave to intervene in the action. Tr. Ct. Order, 2/18/15. The same day, the trial court also entered an order denying as untimely Plaintiff's motion for argument on the rule to show cause.

**E. Preliminary Objections**

Meanwhile, on January 30, 2015, Defendants, through their personal representative, Attorney Janet Marsh Catina (Estate Representative), filed preliminary objections to Plaintiff's complaint in the nature of a demurrer. First, Defendants asserted Plaintiff's complaint was legally insufficient because Pennsylvania law does not recognize a cause of action for "loss of support,

cooperation, aid, companionship or loving interaction." Prelim. Objs. at ¶1a. Second, Pennsylvania law does not recognize a cause of action for loss of consortium between a nephew and his aunt or uncle. Prelim. Objs. at ¶1b. Third, Plaintiff's complaint lacked any allegation that either Frank J. Young or Norma Young committed any of the acts specified. Prelim. Objs. at ¶1c. Fourth, although Plaintiff's complaint alleged undue influence, it did not name an alleged perpetrator. Prelim. Objs. at ¶1d. Fifth, Plaintiff's complaint failed to aver in what manner Plaintiff suffered economic harm as a result of the conduct alleged. Prelim. Objs. at ¶1e. Therefore, Plaintiff lacked standing to bring any cause of action based on that conduct. Id.

Defendants further asserted Plaintiff's complaint failed to conform to law or rule of court for a number of reasons. See Prelim. Objs. at ¶2(a) – (i). Chiefly, Defendants alleged, even assuming Plaintiff's complaint is an attempt to lodge a will contest, Plaintiff's action is improper. Prelim. Objs. at ¶2(a). Rather, the correct action would be the filing of a caveat or an appeal from probate. Id. Such actions fall within the mandatory jurisdiction of the Orphans Court Division. Id. To that end, Plaintiff's complaint, which would affect the interests of the nine charitable beneficiaries named in Frank J. Young's will, failed to provide notice to the Attorney General as required by Pa. O.C.R. 5.5. Prelim. Objs. at ¶2(i).

Defendants also alleged Plaintiff's complaint: contained scandalous and impertinent matter, lacked sufficient specificity to determine what cognizable cause of action was alleged, and purported to sue "The Estate of Frank J. Young and Norma Young," a legal entity that does not exist. Prelim. Objs. at ¶¶3, 4, 5.

6

Because this case may affect the rights of charitable beneficiaries, the Attorney General entered an appearance as *parens patriae* (public guardian), and joined in Defendants' preliminary objections. The Attorney General is an indispensable party in every proceeding which affects a charitable trust. In re Voegtly's Estate, 151 A.2d 593 (Pa. 1959); In re Milton Hershey Sch. Trust, 807 A.2d 324 (Pa. Cmwlth. 2002) (*en banc*).

The same day, Plaintiff filed a one-page response to Defendants' preliminary objections.

### F. Trial Court Orders

On March 2, 2015, the trial court held oral argument on Defendants' preliminary objections. Plaintiff failed to either appear or submit a brief. Two days later, the trial court issued an order sustaining Defendants' preliminary objections and dismissing Plaintiff's complaint. In its order, the court stated

> 1. Defendants' first preliminary objection in the nature of a demurrer is GRANTED. The allegations in Plaintiff's Complaint are legally insufficient as Pennsylvania Law does not support the causes of action(s) raised therein, nor does the Plaintiff set forth facts sufficient to plead a cognizable cause of action. As such, Plaintiff's Complaint is DISMISSED.
>
> 2. The other preliminary objections raised by Defendants are DISMISSED as moot since the Plaintiff's Complaint is being dismissed, as set forth above.

Tr. Ct. Order, 3/4/15.

In response, Plaintiff filed a motion for reconsideration and a request to file an amended complaint. On March 13, 2015, the trial court issued an order denying Plaintiff's motion for reconsideration. Plaintiff appealed.

## II. Discussion

## A. Argument

Plaintiff raises the following issues in his Statement of Questions:

Was it proper for the Court to dismiss Plaintiff['s] complaint without:

> a. affording [Plaintiff an] opportunity to repair pleadings.

> b. Plaintiff [an] opportunity to oppose [Charities'] petition to intervene.

> c. Notice to Plaintiff of instruction of local rules of procedure advising Plaintiff of a prerequisite briefing schedule before the preliminary objection hearing.

> d. Certifying or guaranteeing delivery of notice of a hearing schedule to argue against Defendants['] Preliminary Objections which prejudicial [sic] pro se Plaintiff Young who received rural mail notice 7 days after hearing was already held.

> e. Allowing opportunity to amend [the] complaint and to provide pro se litigant instruction therein[.]

Appellant's Br. at 6.

Essentially, Plaintiff argues he suffered "mental, emotional pain, anguish and loss of economic support, cooperation, aid and companionship thru

8

[sic] damaging interference in his relationship with his aunt and uncle." Appellant's Br. at 8 (Summary of Argument). Plaintiff asserts these injuries "resulted from the action of the person or parties responsible for directing the administration" of his aunt's and uncle's estates. Id. However, without pre-complaint discovery, Plaintiff cannot name the parties responsible. Nevertheless he asserts they include: "(estate administrator, legal council [sic], health care providers, etc.)" Id. However, Plaintiff believes he can obtain the necessary information regarding the "persons/parties accountable … via application of discovery subpoenas …." Id.

Plaintiff further asserts the trial court improperly denied him an opportunity to argue against Charities' petition to intervene. Appellant's Br. at 8 (Summary of Argument). In addition, Plaintiff argues he did not receive timely notice of oral argument on the preliminary objections and certain filing requirements, including the need to file an answer and a brief. Id.

Consequently, Plaintiff requests that we "find in favor of [his] timely answer" to Charities' petition to intervene. Appellant's Br. at 15. Plaintiff also seeks a remand with directions to the trial court to instruct him on the "repair of pleadings previously denied" and provide him with time to "repair pleadings accordingly." Appellant's Br. at 15. Plaintiff requests that we direct the trial court on remand to allow discovery deemed necessary to repair of Plaintiff's complaint. Id. Plaintiff asserts this would include:

> 1. subpoena of Youngs['] financial records of years 2012 thru [sic] 2015

9

2. subpoena[s] of [Executor's]/estate administrator records of Youngs['] health and fiscal care without regard to Attorney/Client privilege 2012 thru [sic] 2015.

3. subpoena of information of health care providers and medical records.

Appellant's Br. at 15. Ultimately, Plaintiff requests that we instruct the trial court to permit him to file an amended complaint.

## B. Analysis

### 1. Denial of Reconsideration

Plaintiff's notice of appeal states that he appealed from the trial court's March 13, 2015 order denying his motion for reconsideration of the trial court's earlier order granting Defendants' preliminary objections and dismissing his complaint. However, an order denying reconsideration of a final order is not an appealable order. Edwards v. Bd. of Pardons, 970 A.2d 425 (Pa. 2008); Estate of Merrick, 247 A.2d 786 (Pa. 1968).

Nonetheless, Plaintiff filed his notice of appeal on March 24, 2015, less than 30 days after the trial court's March 4, 2015 order sustaining Defendants' preliminary objections. In addition, the trial court, in an opinion in support of its order, and the parties, in their appellate briefs, address the merits of the order sustaining preliminary objections. As such, we will review the merits of the trial court's order.

## 2. Appellate Review

When reviewing a trial court's order sustaining preliminary objections in the nature of a demurrer, our standard of review is *de novo* and our scope of review is plenary. Seeton v. Adams, 50 A.3d 268 (Pa. Cmwlth. 2012). Preliminary objections may be sustained when, based on the facts pled, it is clear that the plaintiff will be unable to establish a right to relief. Id. All well-pled material facts alleged in the complaint, and the inferences fairly deducible therefrom, must be accepted as true. Id. However, conclusions of law, argumentative allegations, expressions of opinion and unwarranted inferences need not be accepted. Id.

## 3. Failure to State a Cognizable Claim

Plaintiff's complaint alleges a cause of action against Defendants for "loss of consortium and the los[s] of support, cooperation, aid, companionship and loving interactive relationship critical in the last days of Frank and Normas [sic] life." Compl. at ¶1. More specifically, Plaintiff, as a concerned nephew, seeks a monetary award from his aunt's and uncle's estates to compensate him for the loss of support and companionship that resulted from mistreatment of his aunt and uncle by third parties.

As we noted in Battisti v. Tax Claim Bureau of Beaver County, 76 A.3d 111, 115 (Pa. Cmwlth. 2013), there are three types of civil actions governed by the Pennsylvania Rules of Civil Procedure: (1) an *assumpsit* or contract action; (2) a *trespass* or tort action; and, (3) an equity action. Pa. R.C.P. No. 1001(b). Because Plaintiff seeks monetary damages, his action is not one in equity. Because

Plaintiff does not assert or imply a contractual relationship with his aunt or uncle or their respective estates, his action does not sound in contract. Rather, Plaintiff's claim for loss of support and companionship must be considered a tort action for loss of consortium.

In <u>Steiner by Steiner v. Bell Telephone Co. of Pennsylvania</u>, 517 A.2d 1348 (Pa. Super. 1986), the Superior Court declined to recognize a cause of action on behalf of children for loss of parental consortium based on negligently inflicted injuries to a parent. The Court recognized "that parental consortium included love, companionship, affection, society, comfort, services and solace." <u>Id.</u> at 1350 (citing <u>Hay v. Med. Ctr. Hosp. of Vermont</u>, 496 A.2d 939 (Vt. 1985)).

Nonetheless, Pennsylvania law does traditionally recognize a cause of action for a spouse's loss of consortium. <u>Tucker v. Phila. Daily News</u>, 848 A.2d 113, 127 (Pa. 2004) (citation omitted) (consortium defined as "the legal right of one spouse to the company, affection, and assistance of and to sexual relations with the other"). However, in <u>Steiner</u>, the Superior Court recognized that although some of the same labels may be applied to elements of both the spousal and parent/child relationships, the relationships are substantively different and are not comparable. <u>Id.</u>

Ultimately, the <u>Steiner</u> Court reasoned, the establishment of a parent/child cause of action for consortium is a policy determination for the legislature. <u>Id.</u> Thus, the Superior Court concluded, "<u>we do not recognize a child's cause of action for loss of parental consortium due to tortious interference</u>

of a third party." Steiner, 517 A.2d at 1357 (emphasis added); see also Schroeder v. Ear Nose & Throat Assocs. of Lehigh Valley, Inc., 557 A.2d 21 (Pa. Super. 1989) (parents cannot recover for loss of society and companionship of unborn child; claims for loss of consortium limited to spouses).

In accord with Schroeder and Steiner, no cause of action exists for a nephew's loss of his aunt's or uncle's consortium based on their alleged mistreatment by third parties. Therefore, because there is no legal authority supporting Plaintiff's claim in the present case for loss of his aunt's and uncle's consortium, we observe no error or abuse of discretion in the trial court's order sustaining Defendants' preliminary objections on the basis that Plaintiff's complaint failed to set forth facts sufficient to plead a cognizable cause of action.

### 4. Plaintiff's Remaining Challenges
### a. Pre-Complaint Discovery

Plaintiff argues the trial court erred in denying his motion for pre-complaint discovery.

A trial court's decision to grant or deny pre-trial discovery falls within the trial court's discretion. McNeil v. Jordan, 894 A.2d 1290 (Pa. 2006). In exercising its discretion, a trial court must assess whether the plaintiff can establish probable cause showing his requested discovery will materially advance a legally sufficient pleading. Id. As discussed above, there is no legal authority supporting a nephew's cause of action for monetary damages for the loss of his aunt and uncle's consortium, companionship, or support based on the tortious acts of third

13

parties.  Schroeder; Steiner.  Therefore, Plaintiff's request for pre-complaint discovery would not have aided him in establishing a cause of action for loss of consortium.  Id.  Thus, we discern no abuse of discretion in the trial court's denial of his motion for pre-trial discovery.  McNeil.

## b. Intervention

Plaintiff also argues the trial court erred in granting Charities' petition to intervene without affording him an opportunity to present argument.

A trial court enjoys broad discretion in determining whether to grant a petition to intervene.  Twp. of Radnor v. Radnor Recreational, LLC, 859 A.2d 1 (Pa. Cmwlth. 2004).  As discussed above, the Attorney General, acting as *parens patriae* (public guardian), is an indispensable party in every proceeding that affects a charitable trust.  Because Charities were named as the beneficiaries of the bulk of Frank J. Young's Estate, they clearly had a direct and substantial interest in Plaintiff's action seeking a monetary award against Defendants.  Voegtly's Estate. As such, we discern no abuse of discretion in the trial's court's order granting them leave to intervene.  Radnor Twp.

Nevertheless, Plaintiff argues the trial court erred in finding untimely his response to the trial court's rule returnable requiring that he file an answer by February 13, 2015.  Plaintiff asserts he obtained a U.S. Postal Service form 3817 indicating he mailed his response that day.  R.R. at 5a.

14

Plaintiff's timeliness argument does not compel reversal. The trial court's order required that Plaintiff's answer be received by the court's prothonotary by 4:30 p.m. on February 13, 2015. See Tr. Ct. Order, 1/23/15; C.R. at Item No. 18. Plaintiff's response was not stamped as received by the prothonotary until March 3, 2015. R.R. at 4a. Moreover, regardless of the timing of Plaintiff's response, Charities had a direct and substantial interest in Plaintiff's action against Defendants. Such an interest permits intervention. Consequently, the trial court did not abuse its discretion in granting Charities leave to intervene. Radnor Twp.

### c. Oral Argument on Preliminary Objections

Plaintiff asserts he did not receive notice of the scheduled oral argument on the preliminary objections until seven days after the argument. Plaintiff therefore argues the trial court improperly dismissed his complaint without certifying or guaranteeing notice of argument on the preliminary objections.

Any interested party may request oral argument on a motion. Pa. R.C.P. No. 211. However, the right to argument under Rule 211 is a qualified right subject to judicial discretion. Gerace v. Holmes Prot. of Phila., 516 A.2d 354 (Pa. Super. 1986); City of Phila. v. Kenny, 369 A.2d 1343 (Pa. Cmwlth. 1977). In a given case, the trial court may dispense with oral argument if it so desires and dispose of the case on the record or on the briefs. Gerace (citing Kenny).

15

Here, the trial court observed, Plaintiff's presence at oral argument would not have corrected the deficiencies in his complaint. See Tr. Ct.'s Pa. R.A.P 1925(a) Op., 4/28/15, at 5; C.R. at Item No. 8. The trial court noted Defendants served Plaintiff with a praecipe for argument, dated January 30, 2015, requesting that the preliminary objections be placed on the March 2015 argument list. See C.R. at Items No. 20, 21. Therefore, the trial court reasoned Plaintiff, although uncounseled, had an obligation to check the trial court's March 2015 calendar schedule, which is available to the public.

However, despite being served in mid-February with Defendants' preliminary objections, supporting brief, and praecipe for argument, Plaintiff failed to appear or file a responsive brief as required by Monroe County Rules of Civil Procedure Nos. 1028(c)(2) (briefs required for preliminary objections) and 210 (form and filing of briefs).

Even assuming the trial court or prothonotary should have notified Plaintiff that Defendants' preliminary objections were placed on the March 2015 argument list as requested, we do not believe Plaintiff's presence at oral argument would have resulted in a different outcome. As discussed above, there is simply no legal authority supporting Plaintiff's claim for loss of his aunt's and uncle's consortium or support. Schroeder; Steiner. Given the totality of the circumstances, including Plaintiff's failure to file *written* argument with the trial court, we discern no prejudicial error in the trial court's order sustaining Defendants' preliminary objections regardless of Plaintiff's lack of participation in *oral* argument. Gerace; Kenny.

16

### 5. *Pro Se* Status

Finally, Plaintiff consistently asserts in his brief that as a *pro se* or uncounseled litigant, he is entitled to instruction by the trial court as to how file to a complaint that will survive preliminary objections and state a legally cognizable claim. The trial court, however, bears no such responsibility. Although pleadings filed by uncounseled or unrepresented litigants are to be construed liberally, "an [uncounseled] litigant is not to be given any particular advantage because of his lack of knowledge of the law." Mueller v. Pa. State Police Headquarters, 532 A.2d 900, 902 (Pa. Cmwlth. 1987). In short, an uncounseled litigant cannot expect the court to act as his attorney. Smathers v. Smathers, 670 A.2d 1159 (Pa. Super. 1996).

Regardless, there is no legal authority supporting Plaintiff's claim for loss of his aunt's and uncle's consortium or support. Schroeder; Steiner. Consequently, Plaintiff's complaint could not be amended to state a cognizable consortium claim. Id.

### III. Conclusion

Discerning no error or abuse of discretion in the trial court's order sustaining Defendants' preliminary objections, we affirm.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott T. Young,               :
             Appellant     :
                             :
         v.               :    No. 658 C.D. 2015
                             :
The Estate of Frank J. Young    :
and Norma Young           :

## O R D E R

AND NOW, this 12th day of April, 2016, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of Monroe County is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge